IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OMEGA CAPITAL MANAGEMENT PARTNERS, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 20-1735(MN) ) ) |
| LEONARD SCHRAGE, | ) ) |
| Defendant. | ) ) |

# MEMORANDUM OPINION

Aman K. Sharma, IGWE & SHARMA, LLC, Wilmington, DE; E. Jordan Teague and Beau B. Brogdon, CAMPBELL TEAGUE LLC, Greenville, South Carolina – Attorneys for Plaintiff.

Albert J. Carroll, P. Clarkson Collins, Jr., Christopher P. Quinn, and Barnaby Grzaslewicz, MORRIS JAMES LLP, Wilmington, DE.

May 21, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the motion of Defendant Leonard Schrage ("Defendant") to dismiss (D.I. 25) Plaintiff Omega Capital Management Partners, LLC's ("Plaintiff") Complaint (D.I. 4). The motion is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that: (1) Plaintiff's Complaint fails to plead an enforceable agreement, instead seeking to enforce an "agreement to agree"; and (2) to the extent Plaintiff's Complaint pleads an enforceable contract, such contract is void for violating the public policy doctrines of maintenance and champerty. For the reasons set forth below, this Court GRANTS Defendant's motion because Plaintiff's Complaint failed to plead an enforceable agreement.

**I.     BACKGROUND**

Plaintiff filed the present action on December 21, 2020, seeking injunctive relief, declaratory relief, specific performance, and damages. (D.I. 4).[1] Plaintiff alleges that Defendant, who is involved in multiple personal and business lawsuits in several jurisdictions, sought out Plaintiff as a partner to assist with funding and day-to-day management of the business lawsuits. (D.I. 4 ¶ 5). On June 24, 2020, Plaintiff and Defendant signed an "Option to Fund" ("the Agreement") (D.I. 4-1) outlining the parties' desire to work together exclusively and to reach an arrangement whereby Plaintiff would provide an amount to be negotiated later to fund Defendant's litigation efforts and assist with day-to-day control thereof in exchange for a yet-undetermined share of Defendant's eventual recovery. (D.I. 4 ¶ 6).

Under the Agreement, Defendant allegedly agreed to cooperate with Plaintiff's efforts to conduct due diligence regarding the underlying lawsuits. (*Id.*; *see* D.I. 4-1). On July 30, 2020, the

---

[1]    Plaintiff simultaneously filed a motion seeking a Temporary Restraining Order (*see* D.I. 2), but voluntarily withdrew that motion on February 19, 2020 (*see* D.I. 27),

1

parties signed an addendum to the Agreement ("the Addendum," together with the Agreement "the Option Package") extending the option period until the completion of due diligence, and allegedly obligating Defendant to take "any and all action necessary and proper" to ensure Plaintiff's access to persons and documents relevant to its due diligence. (*See* D.I. 4 ¶ 6; D.I. 4-2).

Plaintiff alleges that Defendant has failed continuously to comply with his obligations set forth in the Option Package to assist with completion of Plaintiff's due diligence. (*See* D.I. 4 ¶ 18). Plaintiff alleges that the delays caused by Defendant's alleged noncompliance have injured the Plaintiff by causing devaluation of Defendant's lawsuits through mismanagement. (*Id.* ¶¶ 51-53).

On January 21, 2021, Defendant filed this motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim because the Agreement and the Addendum were non-enforceable or violated public policy. (*See* D.I. 25; D.I. 26). Plaintiff filed its answering brief on March 8, 2021. (*See* D.I. 37). On March 19, 2021, Defendant filed his reply in support of his motion to dismiss, completing the briefing. (*See* D.I. 40).

## II.     LEGAL STANDARD

When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even

if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 .3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## III.  DISCUSSION

### A.  The Option Package Is an Unenforceable "Agreement to Agree"

Courts applying Delaware law are averse to "enforcing agreements to agree." *See Centreville Veterinary Hosp., Inc. v. Butler-Baird*, Civ. Act. No. 1552-VCP, 2007 WL 1965538, at *8 (Del. Ch. July 6, 2007). "[A]greement[s] to agree in the future without any reasonably objective controlling standards [are] unenforceable." *Id.* Indeed, Delaware courts "will not enforce a contract that is indefinite in any of its material and essential provisions." *Echols v. Pelullo*, 377 F.3d 272, 275 (3d Cir. 2004). Additionally, when commercial parties draft a term sheet intended to serve as a template for a later formal contract, Delaware law "prevents the enforcement of the term sheet as a contract if it is subject to future negotiations because it is, by definition, a mere agreement to agree." *Pharmathene, Inc. v. SIGA Techs., Inc.*, Civ. Act. No.

2627-VCP, 2010 WL 4813553, at *7 (Del. Ch. Nov. 23, 2010). This Court must ascertain, then, whether the parties have agreed, without need for further negotiation, on the essential provisions of the Agreement and the Amendment. *See Heritage Homes of De La Warr, Inc. v. Alexander*, Civ. Act. No. 1399-K, 2005 WL 2173992, at *3 (Del. Ch. Sept. 1, 2005) ("Delaware law requires that, to be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations.") (internal quotation and citation omitted); *Int'l Equity Cap. Growth Fund, L.P. v. Clegg*, C.A. No. 14995, 1997 WL 208955, at *9 n.3 (Del. Ch. Apr. 22, 1997) (Allen, C.) ("Delaware law . . . require[s] the parties to have reached agreement on all material terms before an agreement to agree will be enforced.").

In determining whether all essential terms have been agreed upon, this Court must consider "whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms *that the parties themselves regarded as essential* and thus that the agreement concluded the negotiations." *Pharmathene*, 2010 WL 4813553 at *8 (quoting *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1285 (Del. Ch. 2004)) (emphasis in original).

As an initial matter, the Agreement and the Addendum fail this test on the face of the documents. Both documents conclude with statements indicating that the parties plan to rely on the documents when they engage in "negotiations **hereafter**." (*See* D.I. 4-1; D.I. 4-2) (emphasis added). Thus, the plain language of the Option Package documents indicates that negotiations have not concluded.

Moreover, even if the Agreement and the Addendum did not each conclude by stating plainly that negotiations are incomplete, there are additional indicia in each document supporting

4

the conclusion that the essential provisions of the Option Package were not yet agreed upon. The operative text of the Agreement begins by stating that "[t]he Parties are interested in further exploring a funding structure outlined herein," but that such a structure would "be set out in a final comprehensive integrated funding document which will replace this Agreement in its entirety." (D.I. 4-1 ¶ 1). The language of the Agreement, therefore, clearly states that the essential terms have not yet been agreed upon or memorialized.

The language perhaps most damning to the enforceability of the Option Package appears in a clause in the Addendum. Paragraph 1 states in part that "[s]hould Omega, upon the completion of its Due Diligence . . . decide to fund the litigation as contemplated *in an ultimate funding and management agreement . . . to the terms of which Omega may decide to be bound at some future time*." (D.I. 4-2 ¶ 1) (emphasis added). This passage confirms several key elements preventing the Option Package from being a binding contract: (1) Omega had not decided to, let alone committed to, fund Defendant's litigation; (2) any terms under which Omega might fund Defendant's litigation had not been agreed upon; and (3) even if the terms of such a presently-unwritten agreement were agreed upon, Omega had not yet agreed to be bound by such terms.

This Court is not persuaded by Plaintiff's argument that the Agreement's specification of ranges of funding and potential return sufficiently define the essential terms of the agreement. Applying the standard from *Pharmathene*, a reasonable negotiator would not conclude that two parties agreed on the terms they each considered essential to *an agreement to provide funding for a return certain* when the document contains *neither the amount to be funded nor the return to be owed thereupon.* A reasonable negotiator would expect an agreement to purchase a car to specify a car and a price—the same common-sense logic applies here.

5

To the extent that Plaintiff and Defendant *did* reach an agreement, it was an agreement to agree. Such agreements are not enforceable under Delaware law, and Plaintiff's Complaint will be dismissed.

Additionally, the Court notes that the Option Package contains language that limits the terms of the two documents exclusively to that which is within the four corners thereof (or eight corners, as it were). (*See* D.I. 4-1 ¶ 5.4; D.I. 4-2 ¶ 7). There are, therefore, no additional facts Plaintiff can plead that could supplement the substance or terms of the Agreement and the Addendum. Accordingly, Plaintiff's Complaint is dismissed with prejudice.

### B. As the Option Package is Unenforceable, Any Public Policy Issues Are Moot

As discussed *supra*, the Option Package is an unenforceable "agreement to agree." Any issues or discussion regarding whether the substance of the Option Package violates public policy are, therefore, moot.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 25) is GRANTED. An appropriate order will follow.